# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jovan Badillo, | Court File No.: 14-cv-4824 (DSD/TNL) |
| Petitioner, | |
| v. | |
| | **REPORT & RECOMMENDATION** |
| Warden Kent Grandlienard, | |
| Respondent. | |

Jovan Badillo, MCF – Oak Park Heights, 5329 Osgood Avenue, North, Stillwater, MN, 55082, *pro se* Petitioner.

Jean E. Burdorf, Assistant Hennepin County Attorney, C-2000 Government Center, 300 South Sixth Street, Minneapolis, MN 55487, for Respondent.

This matter is before the Court, Magistrate Judge Tony N. Leung, on a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) and a Motion to Vacate the Sentence and Judgment of the State of Minnesota (ECF No. 4). This action has been referred to the undersigned for report and recommendation to the Honorable David S. Doty, Senior United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court will recommend that the Petition be denied.

## I. BACKGROUND

Petitioner was charged with one count of aiding and abetting assault in the first degree and two counts of aiding and abetting assault in the second degree in Hennepin

1

County District Court. The following facts are set forth in the opinion of the Minnesota Court of Appeals:

> On February 11, 2012, Michael S. and Jose C. ate dinner and had some alcoholic drinks at Pancho Villa Restaurant in Minneapolis. There, they encountered Angel B. and Alan B. Michael and Jose left the restaurant between 1:30 and 2:00 a.m., after Angel got into a dispute with another group of restaurant customers. Michael went to his apartment with Jose, where Michael went to sleep in his bedroom and Jose laid down on the living room couch. About 45 minutes later, Michael woke up to the sound of rocks being thrown against his window. Angel and Alan then knocked on Michael's door, and Michael let them in. Angel and Alan were upset that Michael and Jose had left the restaurant without helping them in the dispute with the other customers.
>
> Michael testified that Angel punched him in the nose and knocked him down. During his attack on Michael, Angel used his cell phone to call appellant. According to Michael's testimony, Angel said, "I got him for you." About 30 seconds later, appellant arrived at the apartment. Michael testified that he saw appellant stab Jose. Jose testified that he was stabbed twice in the leg, once in the stomach, and once in the rib cage. He also testified that he heard appellant say that appellant "was going to kill [Jose]." Alan then intervened and left the apartment with appellant and Angel. Michael drove Jose to an emergency room. At the time of trial, Jose still suffered nerve damage in his leg and had difficulty walking, which he attributed to the injuries he sustained in the stabbing.
>
> On March 6, 2012, appellant was charged with second-degree assault. Appellant rejected the state's offer of an executed sentence of one year and one day in prison in exchange for his plea of guilty. On April 11, the state amended the complaint and charged appellant with one count of first-degree assault and two counts of second-degree assault. The state, understanding appellant had a criminal history score of two, then made appellant a "final" plea offer of 61 months in prison in exchange for appellant's plea of guilty to attempted first-degree assault. On April 20, the state again amended the complaint, the substituted charges being one count of aiding

and abetting assault in the first degree and two counts of aiding and abetting assault in the second degree.

Appellant rejected the state's final plea offer on April 23, 2012, the first day of his jury trial. Appellant's formal rejection of the plea offer was placed on the record. At length, appellant's attorney explained that appellant was facing around ten years in prison if convicted. At one point, the attorney explained that the Minnesota Sentencing Guidelines "call for between 94 months and 132 months based on the charge, and the fact that you have two criminal history points. That's somewhere between nine and eleven years." The attorney also discussed with appellant the state's request that the district court consider the aggravating circumstances and depart upward from the Minnesota Sentencing Guidelines. Appellant's attorney explained that appellant was "looking at between nine and ten years in prison" if convicted and that the district court could "give you more than ten years in prison" by departing from the guidelines as the state requested. The attorney continued:

Q: And, I've talked to you about [the plea offer] on at least two prior occasions when we met, and then again today, right?
A: Yeah.
Q: And, you told me each time that you do not want to plead guilty and go to prison for five years knowing that your exposure is ten years or more?
A: Yes.

In response to appellant's request for the "worst" scenario, his attorney explained that appellant's worst case would be that the district court could grant the state's request to depart from the sentencing guidelines based on aggravating circumstances and sentence appellant to "more than ten years in prison." After a lengthy discussion on the record, appellant rejected the state's final plea offer.

On April 27, 2012, and after a trial during which the district court excluded evidence of cocaine metabolites in Jose's system upon his admission to the emergency room, the jury found appellant guilty of one count of aiding and abetting first-degree assault in violation of Minn. Stat. § 609.221

3

(2010) and two counts of aiding and abetting second-degree assault in violation of Minn. Stat. § 609.222 (2010). The jury then found the state to have proven four aggravating factors supporting an upward sentencing departure.

Before sentencing, the district court ordered a presentence investigation (PSI), which revealed appellant's correct criminal history score to be three points rather than two points. Under a criminal history score of three, the presumptive sentence was 122 months, with a permissible range from 104 to 146 months. On May 30, the district court denied appellant's motion for a new trial and sentenced appellant to 140 months in prison for aiding and abetting first-degree assault. The district court denied the state's motion for an upward sentencing departure and relied on the presumptive guidelines sentence (with three criminal history points). Appellant appealed.

On February 11, 2013, we granted appellant's motion to stay his direct appeal and remand for postconviction proceedings to pursue a claim of ineffective assistance of counsel. In his petition for postconviction relief to the district court, appellant argued that his trial counsel was deficient in advising him of his maximum presumptive guidelines sentence. Appellant argued that he would have accepted the state's plea offer if he had been informed that he could receive a 140-month sentence without the district court departing from the guidelines. He did not dispute that his correct criminal history score is three points.

The district court determined that appellant could not "affirmatively show that his trial counsel's representation fell below an objective standard of reasonableness," relying on appellant having been informed on the record that his sentence could exceed ten years. Appellant "cit[ed] no authority to support his argument that because he was not informed by trial counsel that he could receive more than 132 months without an upward departure, counsel's representation was ineffective." In addition, the district court determined that appellant had failed "to establish that he suffered any prejudice because he has not shown there is a reasonable likelihood he would have accepted the state's plea offers. Because the record did not show that appellant was entitled

> to relief, the district court declined to hold an evidentiary hearing on appellant's postconviction petition. The district court denied appellant's motions to set aside his conviction and for specific performance of the plea offer, or, alternatively, a new trial. This appeal followed.

*State v. Badillo*, 2014 WL 902641 at *1-3 (Minn. Ct. App. Mar. 10, 2014). The Minnesota Court of Appeals rejected all of Petitioner's arguments and affirmed both his conviction and his sentence. *Id.* at *3-6. The Minnesota Supreme Court denied review on June 26, 2014.

Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 on November 21, 2014, asserting the following grounds for relief: (1) he received ineffective assistance from his trial attorney during plea negotiations; and (2) the district court deprived Petitioner of a fair trial by prohibiting Petitioner from eliciting evidence about the victim's cocaine use. Petitioner also filed a separate motion seeking to vacate the sentence and judgment of the State of Minnesota. (ECF No. 4).

On December 9, 2014, this Court ordered Respondent to file an answer to the petition within 30 days addressing the petition's merits. (ECF No. 11.) Respondent filed an answer on January 8, 2015, (ECF No. 12) along with a memorandum in opposition to the petition briefly setting forth facts and arguments supporting summary dismissal of the petition. (ECF No. 13.)

## II. ANALYSIS

### A. Standard of Review

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from

5

illegal custody." *Preise v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated in state court, an application for a writ of habeas corpus can only be granted where the state court's decision on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see, e.g., Linehan v. Milchark*, 315 F.3d 920, 924 (8th Cir. 2003).

A state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it unreasonably applies the correct legal principle to the facts of the prisoner's case. *Id.* at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Leubbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

Under Minnesota law, it is firmly established that "where direct appeal has once

6

been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Two exceptions to the *Knaffla* rule exist: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal; or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006).

### B. Petitioner Fails to Establish His Counsel Was Ineffective

Petitioner asserts that he received ineffective assistance of counsel at trial. Petitioner claims that his attorney was ineffective because he relied upon an incorrect criminal history score when advising Petitioner about his potential sentencing exposure if convicted. Petitioner argues that he would have accepted the state's plea offer if he had been informed that he could receive a 140-month sentence without the district court departing from the presumptive sentencing guidelines.

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that any ineffectiveness prejudiced him, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). When evaluating whether a criminal defendant has received legally competent representation, a court must be mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance." *Id.* at 689.

### 1. Counsel's Representation Was Objectively Reasonable

A defendant's right to competent legal representation "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). When a plea agreement is declined because of incompetent legal advice, the claimant must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e. that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed.

*Id.* at 135.

It bears mention that the *Strickland* standard for ineffective-assistance claims

> must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotation marks and citations omitted). It is harder still to establish that a state court's application of *Strickland* was unreasonable under § 2254. *Id. Strickland* establishes a general standard, and accordingly, the range of reasonable applications of that standard is vast. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Indeed, a federal habeas court "does not directly

assess counsel's performance; we assess the state courts' assessment of counsel's performance." *Barnes v. Hammer*, 765 F. 3d 810, 814 (8th Cir. 2014). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Petitioner argues that his counsel's performance was constitutionally deficient because he relied upon an incorrect criminal history score when advising Petitioner about his potential sentencing exposure if convicted. Petitioner argues that he would have accepted the state's plea offer if he had been informed that he could receive a 140-month sentence without the district court departing from the presumptive sentencing guidelines.

The Minnesota Court of Appeals rejected Petitioner's argument:

> It is clear from the record that, during plea negotiations, appellant's counsel believed that appellant had a criminal history score of two. The belief was mutual, as the prosecutor operated under the same factual misunderstanding. A pre-plea criminal-record summary correctly listed appellant's previous offenses, but incorrectly computed the criminal history score by omitting one offense because of the preparer's belief that the offense had been used to enhance another later offense to a felony. This was incorrect. Appellant's postconviction PSI revealed that the correct calculation of appellant's criminal history score, based on all of appellant's prior offenses, was three, rather than two, as all had believed during plea negotiation.
>
> The reasonableness of counsel's conduct must be judged 'on the facts of the particular case, viewed as of the time of counsel's conduct.' [*State v.*] *Rhodes*, 657 N.W.2d [823,] 844 [(Minn. 2003)] (quotation omitted). As the district court pointed out, appellant's counsel provided accurate information 'based on the information that the parties had at the time of the offer.' The supreme court has previously held that an attorney acts reasonably when relying on a defendant's criminal-record summary. *See State v. Miller*, 754 N.W.2d 686, 709 (Minn. 2008) (holding that when the state inadvertently provided the defendant with an inaccurate copy of his

9

> criminal history record, counsel's performance in reliance on the inaccurate record 'was not ineffective'). Here, the district court found that appellant's counsel reasonably relied on the initial criminal-record summary. Appellant fails to identify how his attorney should have known that the summary was incorrect. Because appellant's counsel provided advice based on facts that both of counsel (and the district court) believed were accurate at the time, his conduct does not fall below an objective standard of reasonableness. *See Rhodes*, 657 N.W.2d at 844.

*Badillo*, 2014 WL 902641 at *3 (footnote omitted). Ultimately, the state court found that Petitioner's counsel correctly informed him that, "if convicted, his sentence could exceed ten years." *Id.* at *4.

The state court set forth the appropriate standard for evaluating Petitioner's *Strickland* claim. Petitioner's counsel informed him that if he was found guilty at trial, he could receive a sentence of more than ten years imprisonment. Indeed, even if Petitioner's understanding of the particulars of calculating the Minnesota sentencing guidelines was erroneous, "there was evidence that [he] knew of the approximate and lengthy possibilities for his sentencing." *Barnes v. Hammer*, 765 F.3d 810, 814 (8th Cir. 2014). Under these circumstances, the court of appeals' finding that Petitioner received effective assistance of counsel is not an unreasonable application of *Strickland*.

### 2. Petitioner Suffered No Prejudice

Even if Petitioner had demonstrated that counsel was ineffective for failing to conduct an independent investigation of his criminal history, and Petitioner has not, Petitioner would still fail to demonstrate prejudice. As noted above, in order to prevail on his claim of ineffective assistance, Petitioner must show that there was a reasonable probability that, but for counsel's alleged error, he would have accepted the state's

"final" pretrial offer of 61 months in prison in exchange for his plea of guilty to attempted first-degree assault. Petitioner argues that he would have accepted the state's plea offer if he had known he could receive more than ten years *without* the district court departing from the sentencing guidelines.

The Minnesota Court of Appeals determined that Petitioner was "unlikely to have accepted the state's plea offer" because Petitioner "rejected the state's plea offer of a 61-month sentence with knowledge that he faced more than ten years in prison." As the Minnesota Court of Appeals stated:

> The record reveals ongoing plea discussions over a number of weeks, conducted in the presence of the district court. Because appellant rejected the state's plea offer of a 61-month executed sentence with knowledge that he faced more than ten years in prison, the district court did not err in concluding that appellant failed to affirmatively establish a "reasonable probability" that he would have accepted the state's plea offer had he known that he could face 11 2/3 years in prison—a sentence easily within the contemplation of "more than ten years."

*Badillo*, 2014 WL 902641 at *4.

This Court agrees with the Minnesota Court of Appeals and finds Petitioner's argument unpersuasive. Petitioner was told, based on both counsel's erroneous understanding of his criminal history points, that the guidelines provided for a sentence of between 94 and 132 months. There are no facts to suggest that Petitioner would have accepted the plea deal had he known he could receive a sentence of more than ten years within the presumptive guidelines. *See Lafler*, 132 S. Ct. at 1389 ("[A] court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions."). Indeed, the facts show Petitioner knew that he

11

could be facing more than ten years in prison, and his counsel explained to him that this was a likely possibility due to aggravating circumstances. Nevertheless, Petitioner turned down a plea deal of 61 months. Petitioner's assertion that but for original counsel's decision to rely upon an erroneous criminal history score provided by the state he would have insisted on accepting the state's offer fails to establish prejudice.

### C. State Court Evidentiary Ruling Is Not A Due Process Violation

Petitioner also argues he was deprived of a fair trial due to the district court's exclusion of potential impeachment evidence regarding the victim's cocaine use before the assault. As set forth in the opinion of the Minnesota Court of Appeals:

> Appellant then sought to introduce medical testimony regarding an emergency room blood test that revealed cocaine metabolites in Jose's system. After a lengthy discussion, the state offered a compromise that it would be "willing to stipulate that upon arrival at the emergency room" Jose's blood test revealed a .045 blood-alcohol content. Appellant's counsel responded that he was "satisfied" with this stipulation. Appellant's attorney again sought to introduce the evidence of cocaine metabolites, but the district court stated that the cocaine evidence "is out, the alcohol is in." Appellant's counsel again responded that he was "satisfied with the stipulation." Nevertheless, appellant argues on appeal that he was prejudiced by the district court's evidentiary ruling.
>
> . . .
>
> Appellant argues that the district court abused its discretion by excluding evidence of Jose's cocaine use because appellant was denied the opportunity to show that Jose was intoxicated at the time to which his testimony relates. We disagree. The jury heard testimony that Hose had an alcohol concentration of .045 upon arrival at the emergency room. Appellant had ample opportunity to show that Jose may have been intoxicated at the time to which his testimony relates. As a result the district court was not required to allow additional medical testimony regarding Jose's possible use of another intoxicant.

12

> More importantly, the evidence of cocaine metabolites was not shown to be relevant. Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Only relevant evidence is admissible. The state argued to the district court that, if appellant introduced the evidence of cocaine metabolites in Jose's system, it was prepared to introduce additional medical testimony showing that Jose could have ingested cocaine up to three days before the assault. The record reveals no other expert or other evidence tending to show that the challenged evidence would have shown that Jose lied about his drug use on the day of the assault and that the presence of cocaine metabolites would have either shown Jose to have been intoxicated by cocaine or impeached Jose's denial of use of other drugs that night. Therefore, the evidence of the presence of cocaine metabolites in Jose's system has no tendency to make any fact in issue more or less probable, and was properly excluded as irrelevant. The district court acted within its discretion in preventing appellant from introducing medical testimony regarding cocaine metabolites.

*Badillo*, 2014 WL 902641 at *5-6 (internal quotation marks, citations and footnote omitted).

Generally, "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault,* 208 F.3d 695, 697 (8th Cir. 2000). A habeas petitioner who claims that a state court evidentiary ruling violated his federal constitutional rights faces a very heavy burden of persuasion. "'To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict *probably* would have been different.'" *Gee v. Groose,* 110 F.3d 1346, 1350 (8th Cir.1997) (emphasis added), quoting *Anderson v. Goeke,* 44 F.3d 675, 679 (8th Cir.1995). *See also Harris v. Bowersox,* 184 F.3d 744, 752 (8th Cir.1999)

(same), *cert. denied,* 528 U.S. 1097 (2000).

This Court agrees with the Minnesota Court of Appeals that this exacting standard was not met here. Although Petitioner was not allowed to present evidence of the victim's alleged cocaine use, he was given the opportunity to present evidence that the victim was highly intoxicated at the time to which his testimony related. Acting under the equivalents of Federal Rules of Evidence 401 and 402, the trial court excluded evidence of Jose's alleged cocaine use as irrelevant. Whether or not this ruling was erroneous under Minnesota law—and in this Court's opinion, it was not—, it was not so crucial as to transgress Petitioner's rights under the Due Process Clause of the Fourteenth Amendment. Based on Petitioner's ability to present evidence that the victim was heavily intoxicated, the district court's correct identification of the applicable legal principles and application of those legal principles in a manner that was not objectively unreasonable, Petitioner's request for habeas relief cannot be granted on this claim.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Motion for Writ of Habeas Corpus (ECF No. 1) be **DENIED,** the Motion to Vacate the Sentence and Judgment of the State of

Minnesota (ECF No. 4) be **DENIED**, and this action be **DISMISSED WITH PREJUDICE.**

Date:  July 24, 2015                     s/ Tony N. Leung
                                         Tony N. Leung
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Badillo v. Grandlienard*
                                         File No. 14-cv-4824 (DSD/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court by **August 25, 2015.**